IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL ACTION |
| v. : | |
| : | NO. 08-569 |
| THOMAS ROSE : | |

SURRICK, J.                                                                                         JULY 24, 2009

### MEMORANDUM

Presently before the Court is Defendant Thomas Rose's Omnibus Pretrial Motion. (Doc. No. 46.) For the following reasons, the Motion to Suppress Physical Evidence will be denied. The remaining motions will be dismissed as moot.

**I.   BACKGROUND**

On September 18, 2008, Thomas Rose ("Defendant") and two co-defendants, Donte Sanders and Theodore Smith, were indicted on charges of conspiracy to interfere with interstate commerce by robbery in violation of 18 U.S.C. § 1951(a) (Count One); interference with interstate commerce by robbery in violation of 18 U.S.C. § 1951(a) and 18 U.S.C. § 2 (Count Two); and using or carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2 (Count Three). (Doc. No. 1.) Sanders was also charged with three additional counts of interference with interstate commerce by robbery (Counts Four through Six). (*Id.*) Sanders has entered pleas of guilty on all counts.

On April 20, 2009, Defendant filed an Omnibus Pretrial Motion that contained the following individual motions: (1) Motion to Suppress Physical Evidence; (2) Motion in Limine to preclude the use of marijuana found on Defendant; (3) Motion to Dismiss Duplicitous [sic] Count of the Indictment; and (4) Motion for Relief from Prejudicial Joinder. (Doc. No. 46.) The

Government responded on April 23, 2009. (Doc. No. 48.) A motions hearing was held on April 24, 2009. With regard to Defendant's motion to preclude the use of marijuana found on Defendant, the Government advised that it did not intend to use the marijuana that was found on Defendant and that the issue, therefore, is moot. (Hr'g Tr. 3, Apr. 24, 2009.) As to the remaining motions, defense counsel advised that Defendant agreed to withdraw the motion to dismiss the duplicative count. (*Id.*) In addition, defense counsel advised that in light of co-defendant Sanders's guilty plea, Defendant's motion for relief from prejudicial joinder was moot. (*Id.* at 3-4.) Accordingly, the hearing proceeded solely on the issue of Defendant's Motion to Suppress Physical Evidence.

## II. FINDINGS OF FACT

On December 19, 2007, at approximately 12:15 p.m., Philadelphia Police Officer Lesinette Ortiz responded to a police radio call about a robbery at a Dunkin' Donuts located at 1325 East Washington Lane. (Hr'g Tr. 4-5.) Officer Ortiz interviewed the complaining witnesses at the store and relayed the information that she gathered over police radio. (*Id.* at 6.) Officer Ortiz provided a flash description of the robber as a black male in his early twenties, who was wearing a black leather jacket and white hoodie and carrying a silver handgun. (*Id.* at 7-8.)

Officer Terrence Young[1] and Officer Britton Brown were in a patrol car at Washington Lane and Mansfield Avenue when they heard the radio call about the Dunkin' Donuts robbery. (*Id.* at 9-11.) The officers were approximately two blocks from the site of the robbery. (*Id.* at

---

[1] Officer Young is deceased. (Hr'g Tr. 10.) Officer Young testified at a preliminary hearing on March 18, 2008. (*Id.* at 30.) Counsel agreed that a transcript of Officer Young's testimony could be made a part of the hearing record. (*Id.* at 31-32.) We will cite to the "Preliminary Hearing Transcript" for Officer Young's testimony.

2

13-14.) Officer Brown was acting as the "recorder" in the passenger seat of the patrol car; Officer Young was the driver. (*Id.* at 12.) When Officer Brown heard the flash description over the radio, he was looking out of his passenger window northbound up Mansfield Avenue. (*Id.* at 13.) He saw two men walking at a brisk pace northbound on Mansfield with their hands in their pockets and with their heads down. (*Id.*) Officer Brown observed that one of the men was wearing a black jacket. (*Id.* at 14.) Officer Brown could not determine the man's race because he was facing away from the officer. (*Id.*) It appeared to Officer Brown that the men were attempting to leave the area in great haste. (*Id.* at 26.) Officer Brown informed Officer Young of his observations and suggested that they take a second look at the two men. (*Id.* at 14.) Officer Young drove the patrol car around the block. (*Id.* at 14-15; Prelim. Hr'g Tr. 20, Mar. 18, 2008.) As the patrol car turned from Duval Street onto Mansfield Avenue, the officers saw the two men getting into the rear of a silver Cadillac. (Prelim. Hr'g Tr. 20; Hr'g Tr. 28, 30.) Officer Young turned on the patrol car's overhead lights and pulled in front of the Cadillac in order "to block . . . off" the vehicle. (Prelim. Hr'g Tr. 22; Hr'g Tr. 15.) The two cars were bumper to bumper, but not touching, with the patrol car facing north on Mansfield Avenue and the Cadillac facing south.[2] (Hr'g Tr. 15, 26.) Almost immediately, three men exited the vehicle and fled on foot. (*Id.*) The officers pursued engaged in foot pursuit. (*Id.*) Defendant was in the line of sight of both officers; they chased him south on Mansfield and then along an alley in the rear of the 1500 block of Washington Lane. (*Id.* at 15-16; Prelim. Hr'g Tr. 20-21.) As they chased him,

---

[2] Officer Brown testified at the motions hearing that the Cadillac was traveling at less than five miles per hour when the patrol car pulled up in front of it. (Hr'g Tr. 26.) Officer Young testified at the preliminary hearing that when he activated the lights, "the Cadillac was at a standstill so it wasn't moving." (Prelim. Hr'g Tr. 22.)

Defendant discarded a silver handgun onto the ground.³ (Hr'g Tr. 16.) Defendant lost his footing and fell, and the officers converged on him and placed him in custody. (*Id.*) Defendant's outfit was dark blue. (Hr'g Tr. 24; Prelim. Hr'g Tr. 21.) Officer Brown recovered the firearm from the ground. (Hr'g Tr. 16; Prelim. Hr'g Tr. 21.) It was loaded. (Hr'g Tr. 17.) The officers did not see the other two men. (Hr'g Tr. 16.)

### III. CONCLUSIONS OF LAW

Defendant moves to suppress the firearm recovered by police. (Doc. No. 46 at 3.) He argues that the firearm is the fruit of an illegal search because the stop and seizure of the Cadillac was not supported by reasonable suspicion. (*Id.*)

#### A. When was Defendant seized?

"Before even addressing whether the police had reasonable suspicion to approach [and engage an individual], the District Court [must first inquire] into whether [the individual was] seized by the police within the meaning of the Fourth Amendment." *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009) (quotation marks omitted; alterations in original). "[T]he Supreme Court has held that for there to be a seizure, either the police must apply physical force to the person being seized, or the person must submit to an assertion of police authority." *United States v. Williams*, 413 F.3d 347, 352 (3d Cir. 2005) (citing *California v. Hodari D.*, 499 U.S. 621, 626-28 (1991)). "A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." *Brendlin v.*

---

³ Officer Brown testified that Defendant "discarded a silver handgun onto the ground with his right hand." (Hr'g Tr. 16.) Officer Young testified that the handgun "fell from [Defendant's] right waistband onto the ground." (Prelim. Hr'g Tr. 21.)

4

*California*, 551 U.S. 249, 254 (2007) (citing *Hodari D.*, 499 U.S. at 626 n.2); *see also United States v. Valentine*, 232 F.3d 350, 358 (3d Cir. 2000) ("[I]f police make a show of authority and the suspect does not submit, there is no seizure."). Such attempted seizures often occur in the context of attempted car stops. *See, e.g., United States v. Baldwin*, 496 F.3d 215, 216 (2d Cir. 2007) ("When a driver heeds a police order to stop only to drive away as the police approach, has the driver been seized within the meaning of the Fourth Amendment? We hold that a seizure requires submission to police authority, and conclude that the driver's initial fleeting stop does not amount to such submission."); *United States v. Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994) ("Although a reasonable person would not have believed that she was free to continue driving once [the police officer] activated his sirens and ordered the [car's] driver to stop, [the defendant] did not in fact submit to the officer's order. . . . Because [the defendant] did not submit to [the officer's] order, he was not seized within the meaning of the Fourth Amendment.").

The situation in the instant case is distinguishable from cases dealing with attempted car stops. While those cases involve police officers being ignored or defied as they signal to drivers to pull over, in this case the police officers physically blocked the vehicle in which Defendant was riding. The decision in *United States v. Jones*, 562 F.3d 768 (6th Cir. 2009), is instructive on this issue. In *Jones*, police officers suspected that the three occupants of a Nissan, which was stopped in front of a house, were involved in a drug transaction. *Id.* at 771. Police officers in an unmarked pickup truck pulled in front of the Nissan "so that the front bumper of [the police] pickup truck was about two or three feet from the Nissan's front bumper." *Id.* "Almost simultaneously," another unmarked police car activated its emergency lights and pulled behind

5

the Nissan, which left it "hemmed in." *Id.* Two of the three car occupants remained seated in the car, but the third, Jones, "opened the car door and 'jumped out.'" *Id.* at 771-72. The police ordered Jones to stop, and he complied immediately. *Id.* at 772. Jones was found to be carrying two handguns and a bag of marijuana. *Id.*

The Sixth Circuit Court of Appeals found that "by blocking the Nissan, the officers had communicated to a reasonable person occupying the Nissan that he or she was not free to drive away." *Id.* Therefore, the court found that "the Nissan was seized, and so were its occupants – but only insofar as they can be deemed to have submitted to the officers' show of authority." *Id.* at 773. Accordingly, "the driver and the other passenger in the Nissan were, by virtue of their passive acquiescence, effectively seized when the police vehicles hemmed in the Nissan." *Id.* at 774. Jones, on the other hand, "did not submit by staying inside the Nissan after the officers arrived; he jumped out of the car and submitted only when [the police officer] identified himself as a police officer and ordered him to stop. Then, and only then, was Jones effectively seized." *Id.* In light of this holding, the court determined that the district court, in analyzing the constitutionality of Jones's seizure, "should have considered all of [the police officer's] observations up to the moment when Jones finally yielded to the unambiguous show of police authority," rather than limiting its assessment to the information available to the police when they "hemmed in" the Nissan. *Id.* at 775; *see also Johnson v. Grob*, 928 F. Supp. 889, 896 (W.D. Mo. 1996) (finding that "there was no seizure when the officers initially blocked [the defendant's] way [in her car] and raised their weapons" because "a seizure occurs by reason of physical force only when an action intended to result in physical force actually results in physical contact" and because the defendant did not submit to the officers' show of authority). *But see United States v.*

6

*Kerr,* 817 F.2d 1384, 1387 (9th Cir. 1987) (finding that where a patrol car blocked the defendant from backing-out of a one-lane driveway, the police officer effected a seizure under *Terry* because the officer's "authority and conduct provided [the defendant] with no reasonable alternative except an encounter with the police"); *United States v. Pavelski,* 789 F.2d 485, 488-89 (7th Cir. 1986) (finding that when police vehicles surrounded a vehicle on three sides, the encounter constituted a seizure).

Here, Defendant argues that "there was a seizure prior to [D]efendant Rose taking flight. That is, the police vehicle blocked the [Cadillac], constituting a seizure." (Doc. No. 46 at 3; *see also* Hr'g Tr. 33.) The Government responds that "[p]ulling a police cruiser up to the car [D]efendant climbed into was, at most, a show of police authority. The [D]efendant did not submit to that show of authority – he fled." (Doc. No. 48 at 2.)

The police officers involved in this situation did more than simply pull their patrol car alongside the Cadillac. They pulled in front of the Cadillac in order to prevent it from driving away.[4] They did not, however, go so far as to "hem[] in" the Cadillac as the police officers "hemmed in" the Nissan in *Jones. See* 2009 U.S. App. 7897, at *3. Nevertheless, like the defendant in *Jones,* Defendant was "a passenger in a vehicle that had been blocked in by the police, [who] was not seized until he submitted to the officer's show of authority." *Id.* at *14. In Defendant's case, "submission" involved being tackled by Officer Young after he fled the vehicle. Accordingly, we find that because Defendant did not submit to the officers' show of

---

[4] Our analysis is not affected by the discrepancy in testimony between Officers Young and Brown. Irrespective of whether the Cadillac was at a standstill when the police car pulled in front of it, or whether it came to a stop at that time, the occupants entirely disregarded the officers' show of authority and thus were not seized under the law.

7

authority when the officers pulled their patrol car in front of the Cadillac, the officers' actions constituted, at most, an attempted seizure. There was no seizure until Defendant was physically restrained by the officers after he fled the vehicle.

Moreover, when the officers ultimately seized Defendant it was pursuant to a lawful arrest. The officers had probable cause to arrest Defendant because they had observed him dropping a weapon in a public alleyway while fleeing. *See United States v. Osario*, No. 08-533, 2009 U.S. Dist. LEXIS 36128, at *5 (E.D. Pa. Apr. 28, 2009) ("[A] Pennsylvania police officer who observes an individual in possession of a firearm on a public street has probable cause to arrest that person for violation of [18 Pa. Cons. Stat. Ann.] § 6108."); *United States v. Collins*, No. 05-1810, 2007 U.S. Dist. LEXIS 93408, at *9 (E.D. Pa. Dec. 19, 2007) (finding that where officers saw the defendant, who was running from the police, remove a handgun from his waistband and discard it, the officers had probable cause to arrest the defendant because "[t]he Supreme Court of Pennsylvania has held that an officer's sighting of a person in possession of a firearm on a public street in Philadelphia provides probable cause to arrest for a violation of [18 Pa. Cons. Stat. Ann.] § 6108"); *Commonwealth v. Romero*, 673 A.2d 374, 377 (Pa. Super. Ct. 1996) (finding that where police officer saw the defendant in possession of a firearm near a public housing project, there was probable cause for the defendant's arrest because there "was sufficient basis for the trained police officer to reasonably infer that [the defendant] was acting in violation of the statutory prohibition against carrying a firearm on public streets or on public property in Philadelphia, 18 [Pa. Cons. Stat. Ann.] § 6108]"); *see also United States v. Bond*, 173 Fed. App'x 144, 146 (3d Cir. Mar. 23, 2006) (unpublished opinion) ("[U]nder Pennsylvania law, a police officer has probable cause to arrest an individual for violation of [18 Pa. Cons. Stat.

8

Ann. § 6108] based solely on the officer's observation that the individual is in possession of a firearm on the streets of Philadelphia.").

**B.     Reasonable Suspicion**

Even if one were to conclude, as Defendant argues, that by blocking the vehicle the police officers seized Defendant, we are satisfied that the police officers had reasonable suspicion to conduct an investigatory stop. Under *Terry v. Ohio*, 392 U.S. 1 (1968), "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that 'criminal activity may be afoot.'" *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (quoting *Terry*, 392 U.S. at 30). "Reasonable suspicion is 'a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000) (quoting *Wardlow*, 528 U.S. at 123).

Defendant argues that "the level of information the police had, a black male in a 'hoodie' was simply insufficient evidence to make the stop and seizure of the [Cadillac], [in] which the [D]efendant was riding." (Doc. No. 46 at 3.) Defendant also argues that observing "[p]eople walking in the streets of Philadelphia with their hands in their pockets, looking down, walking briskly on a winter's day in December" does not give rise to reasonable suspicion. (Hr'g Tr. at 34.)

A review of the record demonstrates that by the time Officers Brown and Young maneuvered their patrol car in front of the silver Cadillac, they had considered at least four factors in deciding to further investigate the two men walking along Mansfield Avenue. First was the partial match with the flash description of the robber. The robber was described, among

9

other things, as wearing a black jacket. Officer Brown observed that one of the two men walking down the street was wearing a black jacket. Second was the timing. Officer Brown heard the flash description at the exact time that he observed the man who matched the partial flash description. The timing factor is intertwined with the third factor: geographical proximity. The police officers were approximately two blocks from the Dunkin' Donuts when they heard the radio transmission about the Dunkin' Donuts robbery. They observed, therefore, that the man in the black coat was in close proximity both in time and place to the crime scene. Finally, the behavior of the men suggested that they might be hurrying away from the crime scene. Although defense counsel makes it sound as though the men were taking a brisk stroll on a cold winter's day, it appeared to Officer Brown that the individuals were "trying to leave the area in great haste." (Hr'g Tr. 26.) Taken together, these factors provided the officers with reasonable suspicion to conduct an investigatory stop. Moreover, after Defendant and his co-defendants fled from the Cadillac, the officers' reasonable suspicion was strengthened. Reasonable suspicion to stop ripened into probable cause to arrest when the officers saw the handgun fall from Defendant.

## IV.   CONCLUSION

For these reasons, Defendant's Motion to Suppress Physical Evidence will be denied, and Defendant's remaining motions will be dismissed as moot.

An appropriate Order will follow.

BY THE COURT:

R. Barclay Surrick, Judge